UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re: :<br>ROBERT R. DEMAURO :<br>JEAN M. DEMAURO :<br>*Debtors* :<br>: | Case No.: 14-32312 (AMN)<br>Chapter 7 |
| :<br>GEORGE I. ROUMELIOTIS, :<br>CHAPTER 7 TRUSTEE FOR THE :<br>ESTATE OF ROBERT R. DEMAURO :<br>AND JEAN M. DEMAURO, :<br>*Plaintiff* :<br>v. :<br>:<br>JOHNSON & WALES UNIVERSITY, :<br>*Defendant* :<br>: | Adv. Pro. No. 15-03011 (AMN)<br><br><br><br><br><br><br><br>Re: ECF No. 72, 76 |

### MEMORANDUM OF DECISION AND ORDER GRANTING
### JOHNSON & WALES UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT

**APPEARANCES**

| | |
|---|---|
| Jeffrey Hellman, Esq.<br>Law Offices of Jeffrey Hellman, LLC<br>195 Church Street, 10th Floor<br>New Haven, CT 06510 | Counsel for the Plaintiff,<br>George I. Roumeliotis,<br>Chapter 7 Trustee |
| George W. Shuster, Esq.<br>WilmerHale<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007 | Counsel for the Defendant,<br>Johnson & Wales University |
| Irve J. Goldman, Esq.<br>Jessica Grossarth Kennedy<br>Pullman & Comley, LLC<br>850 Main Street<br>Bridgeport, CT 06601 | Counsel for the Defendant,<br>Johnson & Wales University |

Before the court is a motion for summary judgment (the "Motion") filed by the

defendant, Johnson & Wales University (the "University") seeking dismissal of the two-

1

count complaint filed by the plaintiff, George Roumeliotis, the Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Robert R. DeMauro and Jean M. DeMauro ("Mr. and Mrs. DeMauro"). AP-ECF No. 72.[1] In this adversary proceeding, the Trustee seeks to avoid and recover as constructive fraudulent transfers certain Federal Direct Parent PLUS Loan proceeds disbursed to the University for the tuition of Mr. and Mrs. DeMauro's adult daughter, Alyson DeMauro, pursuant to 11 U.S.C. §§ 544, 548 and 550. For the reasons that follow, the court concludes that the Direct PLUS Loan proceeds do not constitute an interest of the debtor in property subject to avoidance under 11 U.S.C. §§ 544 and 548 and, therefore, the summary judgment motion is granted.

## I.     JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and 157(b), and the District Court's Order of referral of bankruptcy matters, dated September 21, 1984. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(h) (proceedings to determine, avoid, or recover fraudulent conveyances). This adversary proceeding arises under the chapter 7 bankruptcy case pending in this District; therefore, venue is proper in this District pursuant to 28 U.S.C. § 1409.

## II.    RELEVANT PROCEDURAL HISTORY

On December 18, 2014, Mr. and Mrs. DeMauro filed a voluntary chapter 7 bankruptcy petition. ECF No. 1. Approximately four months later, on April 8, 2015, the Trustee initiated the instant adversary proceeding against the University. In Count One of the adversary proceeding complaint ("Complaint"), the Trustee seeks to avoid two payments allegedly made by Mr. and Mrs. DeMauro to the University – a December 4,

---

[1] Documents filed in the underlying chapter 7 case, bearing case number 14-32312, are identified as "ECF No. ___." Documents filed in this Adversary Proceeding are identified as "AP-ECF No. ___."

2

2012 payment and a March 12, 2013 payment, both in the amount of $8,754.00 -- as constructive fraudulent transfers and to recover the funds pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a), and 551.  AP-ECF No. 1.  In Count Two of the Complaint, the Trustee seeks to avoid eight payments (collectively, the "Eight Payments")[2] allegedly made by Mr. and Mrs. DeMauro as constructive fraudulent transfers and to recover the funds pursuant to 11 U.S.C. § 544(b)(1) and the Connecticut Uniform Fraudulent Transfer Act ("CUFTA").[3]  AP-ECF No. 1.

The University moved to dismiss the Complaint asserting the payments – all of which were Direct PLUS Loan proceeds -- were not property of Mr. and Mrs. DeMauro and not subject to § 548 because they were restricted funds disbursed under the Federal Direct PLUS Loan program.  AP-ECF No. 8.  The motion to dismiss also asserted that the allegation in Count One regarding a payment dated December 4, 2012 should be dismissed as it fell outside of the two year limitation period set forth in § 548(a).  AP-ECF No. 8.  Upon the agreement of the parties, the court (Manning, C.B.J.) struck the allegation in Count One regarding the December 4, 2012 payment.[4]  AP-ECF No. 25.  The court ordered, pursuant to Fed.R.Civ.P. 12(d), that the motion to dismiss be considered as a motion for summary judgment and ordered the parties to submit statements of fact in accordance with D. Conn. L.Civ.R. 56(a)(1) and (a)(2).  AP-ECF No.

---

[2]    The eight payments included: a payment dated March 15, 2011 in the amount of $5,850.00; a payment dated September 13, 2011 in the amount of $2,535.00; a payment dated December 5, 2011 in the amount of $2,397.00; a payment dated December 6, 2011 in the amount of $4,932.00; a payment dated March 13, 2012 in the amount of $4,933.00; a payment dated September 11, 2012 in the amount of $8,754.00; a payment dated December 4, 2012 in the amount of $8,754.00; and a payment dated March 12, 2013 in the amount of $8,754.00. The December 4, 2012 payment and the March 12, 2013 payment are common to both Count One and Count Two.
[3]    The Trustee specifically seeks relief pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2), Conn. Gen. Stat. §§ 52-552f(a).
[4]    The other payment in Count One – the March 12, 2013 payment – remained pending.

3

25. In addition to the parties submitting their respective statements of facts, the Association of Independent Colleges and Universities of Rhode Island, Association of Independent Colleges and Universities of Massachusetts and the Connecticut Conference of Independent Colleges filed an *amicus* brief in support of the University's motion to dismiss. ECF No. 37. At the conclusion of the hearing held on December 2, 2015, the court (Manning, C.B.J.) denied, without prejudice, the University's motion. ECF No. 43.

A little less than one year later, the University filed the present Motion seeking summary judgment as to Counts One and Two of the Complaint, arguing that 1) Mr. and Mrs. DeMauro did not have a property interest in the Federal Direct PLUS Loan proceeds and did not make the transfers; 2) the University was not the first or initial transferee and therefore is entitled to a "good faith" defense; and 3) Mr. and Mrs. DeMauro received reasonably equivalent value in exchange for the payments to the University. ECF No. 72. The Trustee objected and the court heard oral argument on June 22, 2017. *See* ECF Nos. 76, 77, 92.

### III.     FACTUAL BACKGROUND

The following material facts are undisputed:

1. Mr. and Mrs. DeMauro are the parents of Alyson DeMauro, an individual who at all relevant times has been over the age of eighteen. AP-ECF No. 1, ¶ 5; ECF No. 46, ¶ 5.

2. During the period from March 2011 through March 2013, Alyson DeMauro was a student at the University. AP-ECF No. 1, ¶ 6; AP-ECF No. 46, ¶ 6.

4

3. Each year Alyson DeMauro was enrolled at the University, Mr. DeMauro applied for and was approved by the United States Department of Education ("USDOE") for a Federal Direct PLUS Loan to help subsidize the cost of Alyson DeMauro's education at the University. AP-ECF No. 72-1, ¶ 3; AP-ECF No. 76-1, ¶ 3.

4. Federal Direct PLUS Loans were established pursuant to the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1001 *et seq.*, and related regulations, as amended, 34 C.F.R. § 682, governing PLUS loans. AP-ECF No. 39, ¶ 5; AP-ECF No. 41, ¶ 5.

5. In order for Mr. DeMauro to obtain a Federal Direct PLUS Loan, the USDOE required him to complete and sign a Direct PLUS Loan Master Promissory Note ("MPN"). AP-ECF No. 72-1, ¶¶ 4, 8; AP-ECF No. 76-1, ¶¶ 4, 8.

6. When Mr. DeMauro executed the MPN, he certified under penalty of perjury that the loan proceeds would be used for Alyson DeMauro's educational expenses, only. AP-ECF No. 72-1, ¶¶ 4, 8; AP-ECF No. 76-1, ¶¶ 4, 8.

7. From March 15, 2011 to March 12, 2013, the University received Eight Payments, totaling $46,909.00, directly from the USDOE as proceeds of Federal Direct PLUS Loans. AP-ECF No. 39, ¶¶ 1, 2, 5; AP-ECF No. 41, ¶¶ 1, 2, 5.

8. All of the payments referenced in the Complaint – including the March 12, 2013 payment referenced in ¶ 14 of Count One – were proceeds of Federal Direct PLUS Loans. AP-ECF No. 39, ¶¶ 3-5, AP-ECF No. 41, ¶¶ 5, and Counter-Statement pursuant to D.Conn.L.R. 56(a)(2), ¶ 1.

9. The University received the funds for the Eight Payments from the USDOE through a USDOE grant management portal known as "G5" (the "G5 Portal") AP-ECF No. 39, ¶¶ 1,2; AP-ECF No. 41, ¶¶ 1, 2.

10. The USDOE deposited the funds for the Eight Payments into the G5 Portal and the University could electronically withdraw the funds for the Eight Payments and transfer the Eight Payments into the University's checking account. AP-ECF No. 39, ¶ 2; AP-ECF No. 41, ¶ 2.

11. Neither Mr. nor Mrs. DeMauro held – either physically or in an account in their name - any of the funds for the Eight Payments prior to receipt of the funds by the University. AP-ECF No. 39, ¶¶ 3, 4; AP-ECF No. 41, ¶¶ 3, 4.

## IV.   RELEVANT LAW

The principles governing the court's review of a motion for summary judgment are well established. Summary judgment may be granted only if, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); Fed.R.Bankr.P. 7056. "In determining whether there is a genuine dispute as to a material fact, [the court] must resolve all ambiguities and draw all inferences against the moving party." *Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018)(*citing Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013)). In essence, a "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)(internal citations and quotations omitted).

6

Section 548(a)(1)(B)(i) of the Bankruptcy Code permits a trustee to avoid a transfer of an interest of the debtor in property or any obligation incurred by a debtor that was made or incurred within two years before the date of the filing of the petition. 11 U.S.C. § 548(a)(1)(B)(i). As relevant to this decision, for a transfer to be avoidable, the debtor must have received less than "a reasonably equivalent value in exchange for such transfer or obligation" and the debtor must have been "insolvent on the date that such transfer was made" or "became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I). "Section 548 [] attempts to protect creditors from transactions which are designed, or have the effect, of unfairly draining the pool of assets available to satisfy creditors' claims." 5 *Collier on Bankruptcy* ¶ 548.01 (16th). "[N]ot all transfers are within § 548's scope; only those that affect property that would have been property of the estate but for the transfer." 5-548 *Collier on Bankruptcy* ¶ 548.03 (16th).

Section 550(a) authorizes a trustee to recover from the initial transferee of such transfer or the entity for whose benefit such transfer was made, the property transferred or the value of the property for the benefit of the estate to the extent the transfer is avoided under § 548. 11 U.S.C. § 550(a)(1).

Additionally, § 544(b)(1) provides a trustee with the power to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim ... ." 11 U.S.C. § 544(b)(1). Section 544(b) allows a trustee to "step into the shoes of a creditor under state law and avoid any transfers such a creditor could have avoided." *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 113 (2d Cir. 2016)(*citing Universal Church v.*

7

*Geltzer*, 463 F.3d 218, 222 n. 1 (2d Cir. 2006)).[5] In this case, the state law invoked by the Trustee, under Count Two, is the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), specifically the provisions set forth in §§ 52-552e(a)(2) and 52-552f(a). AP-ECF No. 1. Conn. Gen. Stat. 52-552e(a)(2) and 52-552f(a) provide, in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation … (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor … (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
> Conn.Gen.Stat. § 52-552e(a)(2)(B).

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
> Conn.Gen.Stat. § 52-552f(a).

Pursuant to Conn.Gen.Stat. § 52-552b(12), "[t]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." An "asset" for purposes of Conn.Gen.Stat. §§ 52-552e and 52-552f is generally defined as "property of a debtor". Conn.Gen.Stat. § 52-552b(2).

Similarly, in order for a transfer to be avoidable pursuant to § 548 of the Bankruptcy Code the transferred funds must constitute "an interest of the debtor in property." 11 U.S.C. § 548(a)(1). The definition of an interest is most often held to be the "equivalent

---

[5] The goal of subsection (b) of § 544 is to maximize the estate and equalize the distribution of a debtor's assets among creditors of the same class. 5 *Collier on Bankruptcy* ¶ 544.01 (16th). Similar to § 548, a trustee cannot use section 544(b) if the threshold requirement that the debtor have an interest in property is not met. *Id.*

8

to property of the estate as defined in § 541(a)." 5 *Collier on Bankruptcy* ¶ 548.03 (16th). Pursuant to § 541(a), property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[I]n determining the scope of § 541 [the court] must consider the purposes animating the Bankruptcy Code," which includes the intention to "bring anything of value that the debtors have into the estate." *Official Comm. Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991)(internal quotations and citations omitted). Generally, "property interests are created and defined by state law [] … [u]nless some federal interest requires a different result." *Butner v. United States*, 440 U.S. 48, 55 (1979); s*ee also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) (reiterating the rule in *Butner*). Notwithstanding the enactment of the Bankruptcy Code in 1978, *Butner* remains good law.[6]

## V.     DISCUSSION

To avoid a transfer as a fraudulent transfer under either §§ 544, 548, or CUFTA, the Trustee must establish that Mr. DeMauro held an interest in the Direct PLUS Loan proceeds. The Trustee asserts that the court must apply state law to determine if Mr. DeMauro held an interest in the Direct PLUS Loan proceeds. The court disagrees. The existence of the Direct PLUS Loan Program, and the Direct PLUS Loan proceeds, is dependent upon and limited by the Higher Education Act of 1965, 20 U.S.C. §§ 1001 et seq. (the "HEA"). In *Butner*, the Supreme Court held that state law defines property interests "unless some federal interest requires a different result." *Butner*, 440 U.S. at 55.

---

[6]     S*ee Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007); *See also Stern v. Marshall*, 564 U.S. 462, 495 (2011).

9

Here, the countervailing federal interest – to safeguard the integrity of the Direct PLUS Loan Program – requires the application and review of federal law.

Subsequent to the enactment of the HEA, Congress established the Direct PLUS Loan Program to allow "eligible parents …to enable" their student children "to pursue their courses of study" in college.  *See* 20 U.S.C. §§ 1078-2, 1087a; *See also* 34 C.F.R. § 685.100 *et seq.*  Under the Direct PLUS Loan Program, the USDOE provides funds directly to an institution of higher education.  20 U.S.C. § 1087b.  In the event an institution receives from the USDOE an amount that "exceeds the amount of assistance for which the student is eligible … the institution such student is attending shall withhold and return to the [USDOE] … the portion (or all) of such installment that exceeds such eligible amount."  20 U.S.C. § 1078-7(d)(2); *see also* 20 U.S.C. § 1091b.

The regulations promulgated by the USDOE relating to Direct PLUS Loans, include the following relevant provisions:

> A parent is eligible if "[t]he parent is borrowing to pay for the educational costs of a dependent undergraduate student."
> 34 C.F.R. § 685.200(c)(2)(i)
>
> The total amount of all Direct PLUS Loans that a parent … may borrow on behalf of each dependent student … for any academic year of study may not exceed the cost of attendance minus other estimated financial assistance for the student."
> 34 C.F.R. § 685.203(f)
>
> The borrower must give the school … as part of the origination process for a … Direct PLUS Loan: A statement, as described in 34 CFR part 668, that the loan will be used for the cost of the student's attendance
> 34 C.F.R. § 685.206(a)(1).

The HEA imposes a criminal penalty for the misuse of any funds received under the Direct PLUS Loan Program.  *See* 20 U.S.C. § 1097(a)("Any person who knowingly and willfully embezzles, misapplies, steals, obtains by fraud, false statement, or forgery,

10

or fails to refund any funds … provided … under this subchapter … shall be fined not more than $20,000 or imprisoned for not more than 5 years, or both.").

When, as here, a court construes two federal statutes – the Bankruptcy Code and the HEA – the court is obligated to read the statutes consistently. "'[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *F.C.C. v. NextWave Pers. Communications Inc.*, 537 U.S. 293, 304 (2003) (*quoting J.E.M. AG Supply, Inc. v. Pioneer Hi–Bred International, Inc.*, 534 U.S. 124, 143–144 (2001)).

Here, the HEA and the Bankruptcy Code are capable of co-existence if the Direct PLUS Loan proceeds are not property of the debtor. Support of this proposition is found not only in the purpose of § 548 but additionally in the restrictions and limitations set forth in the Direct PLUS Loan Program. As noted previously, the purpose behind § 548 is to recover assets that – but for the transfer – would have been assets available for distribution to creditors. Meanwhile, the HEA's – and specifically the Direct PLUS Loan Program's - purpose is to provide parents with the opportunity to fund their dependent children's secondary education. To protect this purpose, the regulations restrict the use of the Direct PLUS Loan proceeds to education expenses of the dependent child and expressly require that the funds be transmitted directly to the college or university, rather than to the parent-borrower. 20 U.S.C. § 1087b. Most importantly, § 1097(a) imposes a criminal penalty on the misuse of Direct PLUS Loan proceeds. This comprehensive statutory and regulatory scheme of the HEA indicates a clear intent by Congress to channel the Direct PLUS Loan proceeds to educational institutions to pay tuition, and to

11

protect the proceeds from any misuse that might occur in the absence of the direct transfer to the educational institution.

A conclusion that the Direct PLUS Loan proceeds are property of the debtor for purposes of §§ 544 and 548 and therefore available for distribution to a debtor's creditors would undermine the purposes of the HEA and disregard the parent-debtor's lack of possession and control over the Direct PLUS Loan proceeds. The Third Circuit's approach in *The Majestic Star Casino, LLC v. Barden Development, Inc. (In re The Majestic Star Casino, LLC)*, 716 F.3d 736 (3rd Cir. 2013) is instructive on this point. In that case, the Third Circuit addressed whether a debtor's tax status – at the time of the petition - as a qualified subchapter S subsidiary ("QSub") constituted property of the estate pursuant to § 541. The Third Circuit examined the Internal Revenue Code's specific provisions pertaining to QSub status and noted that a debtor with QSub status did not possess an unrestricted right to the use, enjoyment, and disposition of that status, but that its QSub status was dependent on a number of factors outside of the debtor's control. *The Majestic Star Casino, LLC*, 716 F.3d at 758.

> Capacious as the definition of "property" may be in the bankruptcy context, we are convinced that it does not extend so far as to override rights statutorily granted to shareholders to control the tax status of the entity they own. "[T]he Code's property definition is not without limitations...." *Westmoreland*, 246 F.3d at 256. Even accepting that an interest that is "novel or contingent" may still represent property under the Code, *Segal*, 382 U.S. at 379, 86 S.Ct. 511, a tax classification over which the debtor has no control is not a "legal or equitable interest[ ] of the debtor in property" for purposes of § 541.
> *The Majestic Star Casino, LLC*, 716 F.3d at 757.

Here, Mr. DeMauro never possessed or held the Direct PLUS Loan proceeds prior to their being paid to the University. Additionally, Mr. DeMauro lacked any control over how the USDOE would disburse the proceeds. *See* 20 U.S.C. § 1087b. The Direct PLUS

12

Loan proceeds were restricted government funds issued to the University for the limited purpose of paying Alyson DeMauro's tuition and other qualified education-related expenses. Permitting Direct PLUS Loan proceeds to be used to pay non-educational expenses violates the provisions of the HEA and its corresponding regulations and runs counter to Congress's clear intention expressed in the criminal sanctions the debtor would be exposed to had he used the loan proceeds to pay his creditors.

Additionally, this court finds recent discussions by other courts persuasive including *Eisenberg v. Pennsylvania State University (In re Lewis)*, 574 B.R. 536 (Bankr. E.D. Pa. 2017) and *In re Demitrus*, No. 15-22081 (JJT), 2018 WL 1121589 (Bankr.D.Conn. February 27, 2018). In the *Eisenberg* case, the court noted that

> [T]he proceeds from the Parent Plus loans were never [the debtor's] property, were never in his possession or control, and were never remotely available to pay [the debtor's] creditors. As a result, the [USDOE's] payment of the Parent Plus loan proceeds to Penn State did not diminish [the debtor's] bankruptcy estate and avoidance of these transfers would be improper and unwarranted. *Eisenberg*, 574 B.R. at 539.

Here, as in *Eisenberg*, the debtor was never in possession or control of the Direct PLUS Loan proceeds and never controlled their use. The only control Mr. DeMauro possessed was whether or not to apply for the Direct PLUS Loan. After approval, the USDOE provided the funds for the Direct PLUS Loan and disbursed them directly to University. 20 U.S.C. § 1087b.

The Third Circuit, in *The Majestic Star Casino, LLC* decision, also noted that "[f]iling a bankruptcy petition is not supposed to expand or change a debtor's interest in an asset" *The Majestic Star Casino, LLC*, 716 F.3d at 760-761 (internal quotation omitted).

> But under the Bankruptcy Court's holding in this case, a QSub in bankruptcy can stymie legitimate transactions of its parent as unauthorized transfers of

13

property of the estate, even though the QSub would have had no right to interfere with any of those transactions prior to the filing for bankruptcy. *The Majestic Star Casino, LLC*, 716 F.3d at 761.

Here, the Trustee has not cited any authority for the proposition that if the PLUS Loan proceeds are considered property of the debtor, and if the Trustee is allowed to avoid the transfer, that the Trustee could evade the statutes and regulations governing the PLUS Loan proceeds and disburse the proceeds to Mr. DeMauro's creditors. "A debtor may not increase its rights to property through the filing of a bankruptcy petition." *In re Bake-Line Group, LLC*, 359 B.R. 566, 570 (Bankr. D. Del. 2007)("541(a)(1) is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case")(*citing* 5 *Collier on Bankruptcy* ¶ 541.04 (15th)); *See also* 5 *Collier on Bankruptcy* ¶ 541.03 (16th)("[a] trustee can assert no greater rights [in property] than the debtor had on the date the case was commenced."). If the transfer of the Direct PLUS Loan proceeds to the University had not been made prior to the petition date, Mr. DeMauro would not otherwise have been in possession of the Direct PLUS Loan proceeds to pay his creditors or for any other purpose. Additionally, Mr. DeMauro had no legal or equitable right to demand use of the Direct PLUS Loan proceeds in the event the USDOE denied his application. To find that the Direct PLUS Loan proceeds are property within the meaning of § 541 and therefore, property that the Trustee may recover to pay creditors would provide the Trustee with a greater interest in the Direct PLUS Loan proceeds than Mr. DeMauro had at the commencement of his Chapter 7 case.

As noted above, § 548 seeks to prevent the debtor from depleting the assets that but for the transfer would be available to creditors. Here, the inclusion of Direct PLUS Loan proceeds within § 541's definition of property would not serve § 548's purpose as

14

the PLUS Loan proceeds would not have been available to creditors even in the absence of the transfer. Reconciliation of these two federal statutory schemes compels the conclusion that Mr. DeMauro did not have a property interest in the Direct PLUS Loan proceeds within the meaning of § 541 and the Trustee, therefore, cannot avoid the payment of the Direct PLUS Loan proceeds to the University.

## VI.     CONCLUSION

Because the Federal Direct PLUS Loan proceeds do not constitute an interest of the debtor in property subject to avoidance pursuant to §§ 544 and 548, the court grants summary judgment in favor of the University. As the court's ruling on this issue is dispositive, it need not reach the other issues raised in support and opposition to the motion for summary judgment and judgment for the Defendant University shall enter as to Counts One and Two of the complaint.

Dated this 19th day of June, 2018, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut